A98A0606, A98A0607. LUKE v. THE STATE (two cases).

(497 SE2d 376)

McMurray, Presiding Judge.

Defendants Henry Norman Luke and his son James Wesley Luke were jointly charged in an indictment with possession of marijuana with intent to distribute. Norman Luke was further charged with three counts of possession of a firearm by a convicted felon, in that he did "receive, possess and transport a . . . Mossberg New Haven 12 gauge shotgun, Model 600," a "Chinese Norinco SKS 7.62 x 39 rifle[, and] one Marlin model 60, .22 caliber rifle," after having been lawfully convicted in 1995 of felony possession of marijuana. The evidence adduced at defendants' joint jury trial revealed the following:

David Minter, an investigator with United Parcel Service ("UPS"), testified that "UPS reserves the right to open and inspect any package transported by UPS, [or] presented to UPS by anyone." On February 7, 1996, in Tifton, Georgia, Minter examined two packages "addressed to Norman Luke, Route One, Box 187, Axson, Georgia," which had been "[s]hipped across a store-front customer counter, which is a location that's open to the public, [from] Laredo, Texas." Neither package had a return address. The contents were "extremely well packaged; covered in different materials." Minter "[t]ook a pocketknife to the first one and dug into it far enough that [he] determined that [he] felt like it was probably marijuana, but [that] it needed to be tested at that point." Minter notified the Georgia Bureau of Investigation and "transported them [him]self to the GBI office in Douglas[, Georgia,]" where he turned them over to "Agent Whitley." Subsequent tracking of proof of UPS delivery "[f]ound several such deliveries from the same exact shipping location, addressed the same exact identical way, all next-day air, anywhere ranging from 30 to 65 pounds." The two packages were ultimately found to contain a total of 47 pounds of marijuana.

Special Agent Scott Whitley of the Georgia Bureau of Investigation also "determined that marijuana was inside . . ." the two boxes he received from UPS and formulated a plan to make a controlled delivery of the packages to the Norman Luke residence. Willie Jack Connell, the UPS driver, "met [defendant Norman Luke] going out the road as we were coming in; he was not at the residence." Connell identified defendant Wesley Luke as the person that signed for State's Exhibits 4 and 5, the two packages addressed to defendant Norman Luke. Wesley Luke had been driving away from the residence but Connell confirmed he "wanted [Wesley Luke] to come back to the house and sign for this package[; and that] it wouldn't have mattered who it was." Connell "brought out one package; [and] sat it down; [Wesley Luke] signed for it. [Connell] went back to the car;

[and] got another package; [and] sat it on the steps." Connell further confirmed that defendant Wesley Luke never "open[ed] the package in [his, Connell's,] presence[.]" Connell "can't tell you . . . whether [Wesley Luke] ever actually picked up the package or not."

Connell gave Agent Whitley a signal, at which point, Agent Whitley and two other agents exited the delivery van and arrested Wesley Luke. About five minutes later, defendant Norman Luke returned to his residence. Agent Whitley informed Norman Luke his son was in custody for receiving the marijuana addressed to the father. Norman Luke denied knowledge of any marijuana and signed a form consenting to the search of his residence. The investigators found two of the guns in Norman Luke's bedroom, the third in the kitchen. In the senior Luke's jacket pocket was a slip of paper with the name "Maria Belourdes Almanza, Laredo, TX." Two empty packages addressed to Norman Luke had Texas return addresses.

In a custodial statement, Norman Luke "said Wesley Luke is not involved in receiving the marijuana; he just happened to be at [his father's] residence . . . when the marijuana was delivered. Norman Luke thought it was possible that an acquaintance of his from Laredo, Texas, named Moses sent the marijuana." Over Wesley Luke's hearsay objection, Agent Whitley was permitted to testify that "Agent Mike Pitts has informed me [Agent Whitley] that they have received intelligence that he [Wesley Luke] did provide marijuana to a female in Berrien County."

Norman Luke was found guilty as charged on each count while Wesley Luke was found guilty of the lesser included offense of possession of marijuana, more than one ounce. These direct appeals followed. At the request of the defendants, the appeals are consolidated. OCGA § 5-6-44 (a). *Held*:

## Case No. A98A0606

1. The State submitted a certified copy of defendant Norman Luke's 1995 guilty plea to felony possession of marijuana. The trial court admitted this evidence as probative of defendant's criminal intent and course of conduct, as well as proof of defendant's status as a convicted felon. In his third enumeration of error, defendant Norman Luke contends the trial court erred "when it failed to instruct the jury on the limited relevance of similar transaction evidence." We agree and reverse.

"Under the controlling authority of the recent whole court decision in *Belt v. State*, [227 Ga. App. 425 (1) (489 SE2d 157)], the trial court committed reversible error in failing to give, sua sponte, a limiting instruction contemporaneous with the admission of extrinsic acts or similar crimes evidence. Consequently, we reverse the judg-

ment of conviction for all [four] counts and remand for a new trial." *Hinson v. State*, 229 Ga. App. 840 (494 SE2d 693) (whole court).

2. Defendant Norman Luke's remaining three enumerations have been considered. Defendant's second enumeration is without merit. The first and fourth enumerations address circumstances unlikely to recur upon any retrial. Consequently, his motion for a stay of this direct appeal with a remand to raise the issue of ineffective assistance of counsel, per *Herndon v. State*, 229 Ga. App. 457 (494 SE2d 262), is denied.

### Case No. A98A0607

3. In the seventh enumeration of error, defendant Wesley Luke contends the trial court erred in denying his motion for directed verdict of acquittal. He argues there is no evidence he knowingly possessed any marijuana. We agree and reverse his conviction for possession of marijuana, more than one ounce.

"Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense, the court may direct the verdict of acquittal to which the defendant is entitled under the evidence. . . ." OCGA § 17-9-1 (a). Under OCGA § 16-13-30 (a), "[e]xcept as authorized by this article, it is unlawful for any person to purchase, possess, or have under his control any controlled substance."

Here, the trial court correctly charged the jury that actual possession is where a person "*knowingly* has direct physical control over a thing . . . [whereas a] person who, though not in actual possession, *knowingly* has both the power and the intention . . . to exercise dominion or control over a thing, is then in constructive possession." (Emphasis supplied.) See *Lee v. State*, 126 Ga. App. 38 (2) (189 SE2d 872).

In the case sub judice, there simply is no evidence that defendant Wesley Luke had any knowledge that, when he signed for the delivery, those sealed, opaque packages addressed to his father contained contraband. The direct evidence is that he did not participate in the father's scheme. The objected-to statement whereby Agent Pitts had told Agent Whitley "they had received intelligence . . ." that Wesley Luke subsequently provided marijuana to a female in Berrien County is non-probative hearsay under OCGA § 24-3-1 (a), and so cannot constitute circumstantial evidence to establish defendant's state of mind or knowledge at a prior time. See *Duke v. State*, 205 Ga. 106, 110 (52 SE2d 455); *Jones v. State*, 50 Ga. App. 97, 98 (176 SE 896).

"It is well established that merely having been in the vicinity of contraband does not, without more, establish possession. Also, presence at the scene of a crime is not sufficient to show that a defendant is a party to the crime under OCGA § 16-2-20. Even approval of the act, not amounting to encouragement, will not suffice. This is so because under OCGA § 24-4-6[,] to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." (Citations and punctuation omitted.) *Ridgeway v. State*, 187 Ga. App. 381, 382 (370 SE2d 216). "While the evidence creates the gravest suspicion that defendant may be guilty of the [lesser included] offense of which he was convicted under [the] Indictment . . ., suspicion [alone] is not sufficient to support a conviction [under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560)]. [Cits.] The trial court erred in failing to grant defendant's motion for directed verdict as to [Count 1 of the] Indictment [in the case sub judice]." *Ridgeway v. State*, 187 Ga. App., supra at 383. See also *Whipple v. State*, 207 Ga. App. 131 (1) (427 SE2d 101); *Shirley v. State*, 166 Ga. App. 456 (1), 457 (304 SE2d 468); *Collins v. State*, 146 Ga. App. 857 (1), 858 (a), 860 (247 SE2d 602).

*Judgment reversed and case remanded for new trial in Case No. A98A0606. Judgment reversed in Case No. A98A0607. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 16, 1998 —
RECONSIDERATION DENIED FEBRUARY 23, 1998 ▇▇▇▇▇

*George A. Bessonette, Sandra L. Michaels,* for appellants.
*Robert B. Ellis, Jr., District Attorney, Timothy L. Eidson, Assistant District Attorney,* for appellee.