A02A2018, A02A2019. SANDOVAL v. THE STATE (two cases).
(579 SE2d 75)

PHIPPS, Judge.

Epifanio Carmona, Jose Sandoval, and Juan Sandoval were jointly charged and tried for possession of marijuana with the intent to distribute in violation of OCGA § 16-13-30. The jury found Carmona not guilty. It found Jose Sandoval and Juan Sandoval guilty as charged, and their separate appeals are consolidated in this opinion.

In Case No. A02A2018, Jose Sandoval contends that the trial court erred in denying him a directed verdict of acquittal and denying him a mistrial. He also claims that the court erred in admitting the marijuana into evidence because the State failed to establish a chain of custody. Because the record does not support Jose Sandoval's contentions, we affirm.

In Case No. A02A2019, Juan Sandoval contends, among other things, that he was entitled to a directed verdict of acquittal. Because the evidence of his guilt was insufficient to support a conviction, we agree and reverse his conviction.

Viewed in the light most favorable to support the jury's verdict,[1] the evidence showed that on February 9, 2001, a Texas law enforcement agency alerted Sergeant Vince Hester of the Cobb County Sheriff's Department that two suspicious packages, believed to contain marijuana, had been intercepted and sent to him by Airborne Express. The packages arrived in Cobb County, wrapped in brown paper that had been addressed to Hester, who retrieved them the next day.

Under the brown paper of one of the packages was a cardboard box addressed to "Joel Guizar" at a location in Bartow County. A Bartow County sheriff's deputy went to Cobb County to retrieve that package, and he and others searched it pursuant to a warrant. Inside the cardboard box, which was sealed with tape, was a wooden box that had been nailed shut. Inside the wooden box was foam insula-

---

[1] See *Gonzales v. State,* 252 Ga. App. 476 (1) (556 SE2d 183) (2001).

tion wrapped around what appeared to be bundles of marijuana. The officers resealed the box and transported it to Bartow County to conduct a controlled delivery of it to its destination.

On February 13, 2001, a Bartow County sheriff's investigator, disguised as a UPS deliverer, drove to the address on the package, where Carmona, Jose Sandoval, and Juan Sandoval resided. Carmona was home alone and answered the investigator's knock. Holding the package, the investigator asked Carmona whether his name was "Joel Guizar." Carmona answered no. The investigator then asked him whether he was expecting a package, and Carmona answered yes. Carmona accepted the package and went inside. The investigator returned to his vehicle and drove away.

Moments later, law enforcement officers executed a search warrant on the residence. Carmona showed the officers which bedroom belonged to him, which to Jose Sandoval, and which to Juan Sandoval. Inside Juan Sandoval's bedroom, officers found a paper on which the name "Joel Guizar" had been handwritten in green ink. A green pen also was found in that room.

The box was in the living room area, unopened. No other drugs or drug paraphernalia were found at the residence. After the search, the officers arrested Carmona and Jose Sandoval, who had meanwhile arrived home. The men were taken to the sheriff's department, where they were separately interviewed by a Georgia Bureau of Investigation agent, with the assistance of Bartow County Deputy Sheriff Jason Valez, a Spanish interpreter.

Valez testified that Jose Sandoval revealed during his interview that someone named "Frederico had asked him if he were to give him $1,000 would he be willing to receive a package at his home." Jose Sandoval believed that the package was being sent by Frederico's wife, but denied knowing what the package would contain or Frederico's last name.

Apparently, the next day Juan Sandoval voluntarily came to the sheriff's department, where he was interviewed by the GBI agent, along with Valez. Juan Sandoval stated that Frederico had telephoned the residence, that he had answered the call, that Frederico had asked to speak to a person who was not there, that Frederico had then asked him to write down the name "Joel Guizar," and that he had done so. At that point, the GBI agent showed Juan Sandoval the paper seized from the residence, and Juan nodded.

Carmona was the only defendant to testify. He stated that they had rarely received mail at their home and had never before received a box. But on February 13, Jose Sandoval woke him up before leaving for work at 5:00 a.m. and asked him to "receive the mail that was going to get there." And that day, the box arrived. While Carmona did not recognize the name of the recipient, he noted that the package

was addressed to his residence and that the delivery person appeared to be a UPS worker. He was about to go to work and was the only person at home. He recalled that Jose Sandoval had asked him to receive the mail that day, and therefore, he "just said, yes, I'll receive it." Carmona testified that he did not know what the package contained, nor had he known that it was expected until early that morning. In jail, however, one of the Sandovals[2] "explained to [him] that his friend Frederico had told him to please receive the mail for him."

The State presented evidence that the box contained approximately 30 pounds of marijuana. It also presented the testimony of an expert in controlled delivery investigations, who stated that in about 99 percent of controlled delivery cases, the recipient's name is fictitious and, generally, the packages are shipped to residences, not businesses. Further, he explained, many such cases involve a "midway point," a person who is paid to take the risk of receiving the package and holding it for a certain period of time.

### Case No. A02A2018

1. Jose Sandoval contends that he was entitled to a directed verdict of acquittal because the evidence was insufficient to support his conviction.

A motion for [a] directed verdict of acquittal . . . should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law; a challenge to the sufficiency of the evidence in connection with the denial of a directed verdict of acquittal is evaluated based on the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[3]

Specifically, Jose Sandoval argues that there was insufficient proof that he knew the package contained contraband. Evidence of his knowledge was wholly circumstantial. Therefore, we consider whether the jury was authorized to find that the evidence was not only consistent with the hypothesis of guilt, but that it also was exclusive of every other reasonable hypothesis.[4]

The evidence showed that on the morning of the delivery, as Jose Sandoval was about to leave for work at 5:00 a.m., he woke up Carmona and told him to accept the mail, even though they rarely received mail. That day, a box of marijuana arrived that was

---

[2] The record is not clear whether Carmona was referring to Jose Sandoval or Juan Sandoval.

[3] *Postell v. State*, 233 Ga. App. 800, 801 (1) (505 SE2d 782) (1998).

[4] OCGA § 24-4-6; *Inglett v. State*, 239 Ga. App. 524, 527 (6) (521 SE2d 241) (1999).

addressed to "Joel Guizar," an apparently fictitious name that was found written on a piece of paper in his residence. Significantly, Jose Sandoval had agreed to accept a package for someone else at his residence in exchange for a payment of $1,000.

Although Jose Sandoval denies knowing what the package contained, he admitted that he had been offered $1,000 to receive it, and the fact that he expected such a large sum of money simply to receive a package at his home for someone who did not live there authorized the jury to conclude beyond a reasonable doubt that he was aware that the expected package contained contraband.[5] Thus, the evidence was sufficient to support Jose Sandoval's conviction.

2. Jose Sandoval contends that the trial court erred in denying "repeated motions for mistrial, due to the continued misconduct of Carmona's counsel." He complains that, during opening statement, Carmona's attorney referred to the defendants collectively and told the jury that he had only recently been appointed to represent Carmona and that Carmona had been in jail for a year on the charge. Jose Sandoval also complains that on direct examination, Carmona's attorney solicited Carmona's testimony that the only crime Carmona had ever committed was coming to this country without the proper papers.

We have examined the record and find that, contrary to Jose Sandoval's assertion, curative instructions by the court regarding the irrelevancy (as to Jose Sandoval) of the remarks and testimony were adequate to remove any alleged prejudice that Carmona's counsel may have caused. The trial court did not abuse its discretion in refusing to grant a mistrial.[6]

3. Finally, Jose Sandoval contends that the trial court erred in admitting the marijuana because no official from Texas testified about the whereabouts of the package and because it had been shipped by public carrier. "When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence."[7] The chain of custody requirements apply only after the State has taken possession of an

---

[5] See *Gonzales,* supra at 477-478; *Inglett,* supra at 527-528; see generally *Perez-Castillo v. State,* 257 Ga. App. 633, 634 (572 SE2d 657) (2002) (there was sufficient circumstantial evidence upon which the jury could conclude that defendant knew that he was accepting illegal contraband and remained "deliberately ignorant" of the exact contents of the packages).

[6] See *Cowards v. State,* 266 Ga. 191, 194 (3) (c) (465 SE2d 677) (1996) (whether to grant a mistrial is a matter within the trial court's discretion and that discretion will not be interfered with on appeal unless it is apparent that a mistrial is essential to preserve the defendant's right to a fair trial).

[7] (Footnote omitted.) *Armstrong v. State,* 274 Ga. 771, 772 (2) (560 SE2d 643) (2002).

item.[8] "Absent affirmative evidence of tampering, challenges to evidence that focus on the period before the State took possession are governed by general rules of relevance and authentication."[9]

Jose Sandoval's challenge does not concern the evidence after the State took possession of it, but focuses on a period before that time. When Hester procured the package from Airborne Express, the marijuana had been firmly secreted inside it, and there was no affirmative showing of tampering. Thus, Jose Sandoval's challenge is governed by general rules of relevance and authentication.[10]

The package was easily identifiable. The marijuana was securely packed, and there was no showing that tampering had occurred before it reached Georgia. Hester testified about his retrieval of the package from Airborne Express and identified the brown paper that had been wrapped around it and addressed to him. Contrary to Jose Sandoval's argument, neither the State's failure to present testimony from a Texas official nor the fact that the box was sent by Airborne Express rendered the marijuana inadmissible.[11]

### Case No. A02A2019

4. Juan Sandoval contends he was entitled to a directed verdict of acquittal because there was insufficient evidence to show knowing possession, an essential element of possession of marijuana with the intent to distribute.[12] Because evidence of his knowledge was circumstantial, the relevant question is whether, considering the evidence in its totality, a rational trier of fact could have concluded beyond a reasonable doubt that Juan Sandoval's guilt was the only reasonable hypothesis.[13]

In *Baltazar v. State*,[14] a narcotics agent dressed in a Federal Express uniform took a package of cocaine sent to "Kevin Kline" to the address on the package. At that location was a trailer that appeared to be uninhabited. It had been leased to a person named Fortino Cisneros. Baltazar, the defendant, answered the agent's knock. Because Baltazar appeared not to speak English, the agent pointed to his clipboard several times to indicate that Baltazar needed to sign it to obtain the package. Finally, Baltazar took the clipboard and printed the name "Kevin Kline" on the signature record, while looking at the face of the package. Baltazar took the

---

[8] Id. at 772-773.
[9] Id. at 773.
[10] See id.
[11] See id.; see generally *Lyons v. State*, 214 Ga. App. 709 (448 SE2d 777) (1994).
[12] See generally *Llaguno v. State*, 197 Ga. App. 789, 790-791 (1) (399 SE2d 564) (1990).
[13] OCGA § 24-4-6; see *Perkins v. State*, 244 Ga. App. 412, 415 (535 SE2d 802) (2000).
[14] 254 Ga. App. 773 (564 SE2d 202) (2002).

package and went inside. During the ensuing search of the trailer, police officers found the package, unopened, on the floor. They found on a table a business card with "Fortino Cisneros" printed on it. Handwritten on the back of the card was "Kevin Kline." *Baltazar* recognized that while there was a possibility that the defendant knew he was waiting for a package of cocaine to be delivered, there also was a possibility that he a mere "patsy," unaware of the package's contents. And although the police found a business card with the name "Kevin Kline" printed on it, the State had failed to link the card to Baltazar. Therefore, the evidence had not excluded every reasonable hypothesis except Baltazar's guilt.

As in *Baltazar*, the evidence against Juan Sandoval did not exclude every reasonable hypothesis except his guilt. The evidence admissible against him was that a package of marijuana was delivered to his residence, which he occupied with two others, while he was not there and that the package was accepted by someone else on the instruction of Jose Sandoval. There is no evidence that Juan Sandoval knew that someone named Frederico had promised Jose Sandoval money in exchange for receiving the package. To Juan Sandoval, "Frederico" was merely someone who called and asked him to write down the name "Joel Guizar." Although that handwritten name may raise suspicion of Juan Sandoval's involvement in the crime, mere suspicion will not sustain his conviction.[15] Without some additional evidence that shows that Juan Sandoval was expecting the package of contraband, the evidence against him did not exclude every reasonable hypothesis except his guilt. Accordingly, his conviction must be reversed.[16]

5. Division 4 renders Juan Sandoval's remaining claims of error moot.

*Judgment affirmed in Case No. A02A2018. Judgment reversed in Case No. A02A2019. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 4, 2003.

*Ann C. Stahl*, for appellant (case no. A02A2018).

*Perrotta, Cahn & Prieto, Kelley A. Dial*, for appellant (case no. A02A2019).

*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney*, for appellee.

---

[15] Id. at 775; *Luke v. State*, 230 Ga. App. 712, 715 (3) (497 SE2d 376) (1998), vacated on other grounds, 236 Ga. App. 543, 544 (1) (512 SE2d 39) (1999).

[16] See *Baltazar*, supra; compare *Perkins*, supra.