## A09A1965. BELCHER v. THE STATE.
### (690 SE2d 431)

ADAMS, Judge.

Following a trial by jury, Roderick Belcher was convicted of felony possession of marijuana and possession of marijuana with intent to distribute. The two counts were merged for the purpose of sentencing. Following the denial of his motion for new trial, Belcher appeals and contends the State failed to prove chain of custody for the marijuana. He therefore challenges the introduction of that evidence as well as the sufficiency of the evidence in general.

Construed in favor of the verdict, the evidence shows that on January 30, 2008, the manager of the Federal Express office in Athens gave two suspicious packages to Special Agent Mark Lavender. Both packages were addressed to David Johnson at 222 South Hubbard Street, Monroe, GA. Lavender identified State's Exhibits No. 1 and No. 2 as the two packages he received that day. The manager and Lavender opened the packages at the Federal Express office and found two "bails [sic] wrapped in plastic wrap, packaged in Styrofoam, peanut-type packaging material"; they were further wrapped in what appeared to be dryer sheets, which are often used to mask odors of marijuana. Lavender transported both of the packages, with the bales inside, to the Northeast Georgia Regional Drug Task Force office in Athens, where he field tested the contents of one of the two bales; the test indicated the presence of marijuana. Lavender also marked the two bales as "No. 1" and "No. 2." He identified two photographs of the bales and testified that they represented the bales at the time they were removed from the packages. Lavender also weighed both bales together with the inside packaging: No. 1 weighed 2,714 grams and No. 2 weighed 2,753 grams, or roughly six pounds each. While still at the task force office,

Lavender resealed the packages and placed his initials and badge number on the bottom of both boxes.

Lavender and other officers contacted the Monroe police department in order to make a controlled delivery of the packages at the indicated address. Lavender brought the two packages to Monroe. Lavender also obtained a search warrant for the address on the packages.

In Monroe, Lavender and the other officers set up and executed a controlled delivery of the packages, as a part of which, Lavender gave the two packages to Officer Adam Spence just before the delivery. The packages were placed in an unmarked, white van with Federal Express stickers on the doors, and Spence was dressed as a Federal Express employee. Spence drove the van and the packages were on the seat next to him. He carried them to the residence at the address on the packages, but before he reached the door, Belcher met him on the front steps and signed the name "David Johnson" on the signature sheet. Spence identified Belcher at trial as the man who signed for the packages, which Spence left on the porch with Belcher. Spence departed but Officer Tracy Hanson watched Belcher put the unopened packages in the trunk of a white Cadillac and get in, along with two other men, and start to leave with Belcher driving. The car was registered in Belcher's name. Hanson also identified Belcher as the man who received the packages. Officers then moved in as the car attempted to leave; they arrested Belcher, Javarus Hodge and Ben Harris. The boxes were still in the trunk and still sealed. Photographs of the two packages in the trunk were submitted into evidence and Lavender identified them as the original two packages. Police investigation determined that no one named David Johnson lived at the address, and no one named David Johnson was present at the scene. The residents of the house testified that Belcher did not live there but that he was present at the house that morning and had told them that he was expecting a package to be delivered. Also, two telephone recordings of calls placed by Belcher from the jail were introduced at trial.

Lavender and Hanson testified that after the arrests, Sergeant Kracht removed the boxes from the trunk unopened, placed them in a police car, and took them to the Monroe Police Department crime investigation division. Kracht did not testify at trial. About 15 minutes later, Lavender and Hanson also saw the boxes and Kracht again at the police station. The packages were photographed and opened. Hanson witnessed Kracht open the boxes, there are pictures of him doing so, and the interior packages had numbers marked on them. At that point, Hanson observed Kracht place the items in evidence bags, seal the bags, and place the bags in the evidence locker with Kracht's signature and an evidence bar code affixed.

Hanson filled out a property receipt for the packaging material; Kracht filled it out for the marijuana. Only the evidence technician has a key to the locker. And Hanson did not observe any tampering with the evidence. Jessica Chambers, the evidence technician and certified marijuana tester, removed the bags from the evidence locker, tested the substance, and found it to be marijuana with a net weight of a little over nine pounds.

1. The standard for assessing chain of custody has been stated by the Supreme Court as follows:

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. [Cit.] The burden is on the State "to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution." [Cits.] The State need not negative every possibility of tampering, and "need only establish reasonable assurance of the identity" of the evidence. [Cit.] "(W)hen there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight." [Cit.] *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981).

*Hurst v. State*, 285 Ga. 294, 296 (2) (676 SE2d 165) (2009). We must only determine whether the trial court abused its discretion in deciding that the State showed with reasonable certainty that the marijuana tested by Chambers was the same contraband delivered to Belcher. See id.

Although Kracht did not testify, the State established reasonable assurance of the identity of the tested marijuana. First, "[t]he fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." *Mathis v. State*, 204 Ga. App. 244, 244 (1) (418 SE2d 800) (1992). And here, there is no credible evidence of tampering. The State introduced photographs of the items from before the delivery, at the time they were taken out of the trunk, and when the packages were being opened at the police station. The packages had marijuana in them before and after the delivery. Hanson testified that she saw Kracht place the items in the car at the scene and saw him deliver the same items to the police station only a short time later in unopened packages. Lavender's testimony is consistent with Hanson's. The recovered items were packaged in a distinctive manner and were difficult to open. The packages had been sealed and marked for identification, and the bales inside were numbered. The discrepancy in weight is reasonably

attributed to weighing the bales with and without their packaging, which packaging the jury observed at trial.

The case of *Phillips v. Williams*, 276 Ga. 691 (583 SE2d 4) (2003), is distinguishable on its facts.

> In [*Phillips*], there was no evidence that a police officer placed any identifying marks on the evidence bag; no evidence that the bag was placed in a secure location at the police station; no evidence that an officer transported the bag to the crime lab; and no evidence that the crime lab placed any identifying marks on the bag after testing.

*Cowins v. State*, 290 Ga. App. 814, 817 (660 SE2d 865) (2008).

Mere speculation of tampering or substitution is not enough. See *Mathis*, 204 Ga. App. at 244 (1). We find no error.

2. Belcher also challenges the sufficiency of the evidence. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). His sole contention is that the State did not introduce direct evidence that he knew or should have known what was in the packages. But circumstantial evidence was introduced supporting the conclusion that Belcher knew what was in the packages. And whether sufficient circumstantial evidence excluded every other reasonable hypothesis was an issue for the jury:

> Whether circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury, and the jury's finding on this question will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citations and punctuation omitted.) *Drammeh v. State*, 285 Ga. App. 545, 547 (1) (646 SE2d 742) (2007).

Here, Belcher signed for and accepted packages under a name other than his own. He did not live at the address yet he told the residents of the home that he was expecting a delivery at their address. He put the packages in his own car, which also contained electronic scales. He was willing to place two packages addressed to someone else in his own car without checking the contents. He started to drive away, but once he saw officers closing in, he backed the car back into the driveway in what appears to have been an attempt to flee. Considering the totality of the evidence, a rational trier of fact could have concluded beyond a reasonable doubt that Belcher knew or should have known the contents of the packages. See generally *Perkins v. State*, 244 Ga. App. 412 (535 SE2d 802) (2000).

YALE LAW LIBRARY

These facts distinguish the cases of *Sandoval v. State*, 260 Ga. App. 61 (579 SE2d 75) (2003), and *Baltazar v. State*, 254 Ga. App. 773 (564 SE2d 202) (2002). In *Sandoval*, this Court held that the evidence was insufficient to support Juan Sandoval's conviction. Juan lived at the address where a package of marijuana with a fictitious addressee was delivered but he was not home at the time; one of the other occupants accepted the package; and there was no evidence to show that Juan was expecting a package. *Sandoval*, 260 Ga. App. at 66 (4). In *Baltazar*, there was insufficient evidence to eliminate the possibility that Baltazar signed for the package as a mere "patsy" for a delivery intended for someone else. *Baltazar*, 254 Ga. App. at 775. Here there is no evidence to support such a theory.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED JANUARY 13, 2010.

*Virginia L. Garrard, Anthony S. Carter*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Candace K. Slezak, Assistant District Attorney*, for appellee.