A11A2289. MOHAMED v. THE STATE.
(723 SE2d 694)

DOYLE, Presiding Judge.

Abdihakim Mohamed was convicted of possession of cathinone, a Schedule I controlled substance,[1] in violation of the Georgia Controlled Substances Act.[2] He appeals, challenging the sufficiency of the evidence and arguing that the trial court erred by denying his

[1] OCGA § 16-13-25 (3) (GG).
[2] OCGA § 16-13-30 (a).

motion to exclude the report and testimony of the State's expert based on the State's willful failure to comply with the Georgia Criminal Procedure Discovery Act.[3] We reverse, for the reasons that follow.

> When reviewing a challenge to the sufficiency of the evidence used to support a conviction, we view the evidence in the light most favorable to the . . . verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[4]

So viewed, the record shows that on March 4, 2009, two packages were delivered to a DHL Express shipping facility in Clayton County. The packages were initially shipped from Kenya to a DHL facility in the Netherlands, from where they were shipped to the United States on March 2. The packages, which bore the same shipping number, listed the senders as "Accountants & Advisur, BV," and both were addressed to "Accountants & Advisur Inc."[5] The shipping labels indicated that the packages contained "[i]nsurance [d]ocuments."

A DHL Express security manager suspected that the packages "might contain a narcotic," and a supervisor opened them, revealing "some sort of [dry] sticks or twigs with leafy material . . . wrapped in banana leaves or some sort of . . . leafy material." DHL alerted the Clayton County Narcotics Unit, and several officers responded to the facility. One of the officers examined the contents of the packages and visually identified the material as "khat."[6]

Shortly thereafter, Mohamed arrived and claimed one of the packages from the DHL facility, showing his identification as he did so.[7] The police approached and questioned Mohamed, and he stated that he was retrieving the package for another individual. The police

---

[3] OCGA § 17-16-4 (a) (4).

[4] (Citation omitted.) *Arroyo v. State*, 309 Ga. App. 494 (711 SE2d 60) (2011).

[5] Although the recipients on both shipping labels were identical, one listed a Norcross address and the other had a Decatur address.

[6] See *Commonwealth of Pennsylvania v. Mohamud*, 15 A3d 80, 84 (Pa. Super. Ct. 2010) ("Khat is a plant grown in the horn of Africa and the Arabian Peninsula. For centuries, persons in East African and Arabian Peninsular countries such as Somalia, Kenya, and Yemen have chewed or made tea from the stems of the native khat shrub, which is known to have stimulant properties. Khat is often consumed in social settings, and is legal in many parts of East Africa, the Middle East, and Europe. When first cut, khat leaves contain the chemical stimulant cathinone, which over time degrades into the milder stimulant cathine. Chewing of khat containing cathinone results in hyperalertness, hyperactivity, and elevated respiration and heart rate.") (Citations and punctuation omitted.)

[7] A separate individual claimed the second package approximately 30 minutes after

also found a black plastic bag containing bundled plant material in Mohamed's vehicle. Mohamed told police that he was given the bundle "as a pre-payment" for claiming the package, and he was going to take it to a location in DeKalb County.

In September 2009, the state crime lab tested the materials found in the package retrieved by Mohamed and the bag in his car, and the chemist concluded that the substances contained detectable amounts of both cathinone and cathine;[8] the chemist did not measure the quantity of the chemicals in the material. At Mohamed's trial, the chemist testified that cathinone is a chemical that degrades into cathine, another chemical. The chemicals are not visible to the naked eye and are undetectable without the use of scientific testing such as gas or high performance liquid chromatography.

At trial, Mohamed testified that he was born in Somalia, where khat is legal and widely used, including at weddings and other parties. He further explained that khat is harvested from plants; fresh khat is green, and it turns darker within three or four days after harvesting. Mohamed testified that Somalians do not ingest khat until at least two days after harvest so that the chemicals will "go out," and it won't be "too strong." He further stated that it takes three to five days for khat to arrive from Africa to the United States, and "the strong chemicals are gone" by the time it arrives in the United States. According to Mohamed, the khat at issue here was grown in Meru, Kenya, driven approximately 400 kilometers to the Nairobi airport, shipped to the Netherlands or the United Kingdom via air, and then shipped to Ohio before finally arriving in Atlanta.

1. Mohamed challenges the sufficiency of the evidence, arguing that the State failed to prove that he intended to possess cathinone. We agree.

Clearly, there was sufficient evidence, including Mohamed's admission, that he possessed khat. Nevertheless, as the Supreme Court of Georgia recently held in *Duvall v. State*,[9] "the criminal intent required by OCGA § 16-13-30 (a) . . . is *intent to possess a drug with knowledge of the chemical identity of that drug*."[10] Otherwise, the Court explained that possession of a controlled substance would be a strict liability offense.[11] Therefore, the State was required to prove that Mohamed intended to possess khat *with knowledge that it contained cathinone*, which was the controlled substance specified in

---

Mohamed's arrival.

[8] Cathine is a Schedule IV controlled substance. See OCGA § 16-13-28 (a) (2.3). Mohamed, however, was charged with possession of cathinone only.

[9] 289 Ga. 540 (712 SE2d 850) (2011).

[10] (Emphasis supplied.) Id. at 542.

[11] See id.

the accusation. The State failed to do so.

Mohamed testified that, to his knowledge, the chemicals "[went] out" of khat after two days, and shipping from Africa to Atlanta took more than three days. The state crime lab chemist, who was qualified as an expert in the field of drug identification, testified as follows regarding the plant material he tested in this case:

> The plant or the chemicals themselves start as the [c]athinone in a — if it comes from a natural source, it will start in that plant material as [c]athinone. And then once the plant has died or been cut or somehow removed, I guess from the earth in some form, that [c]athinone will degrade into a chemical known as [c]athine[,] . . . [a] Schedule IV [controlled substance]."

When asked whether cathinone would be expected to degrade out of a khat plant within 48 hours after the plant is harvested, the expert responded:

> I would expect that at room temperature if everything, . . . if it was just cut and then laid there in the sun, that the amount of [c]athinone starting with the fresh plant, would definitely be less than it would be 48 or 72 hours after. But as far as it totally disappearing or the strength beginning or ending, I have no firsthand knowledge of experiencing . . . a plant that's been freshly harvested versus one that's come in, versus a certain length of time from harvesting.

Given (1) the State's expert witness's testimony that cathinone converts into cathine, another chemical that Mohamed was not charged with possessing, after some period of time and that cathinone is undetectable without the use of scientific testing equipment; (2) evidence that the khat in this case was harvested more than two days before its subsequent arrival in Clayton County; (3) Mohamed's testimony that he believed the chemical "[went] out" of the khat after two days;[12] and (4) the lack of evidence that Mohamed made any attempt to conceal the nature of the package (by, for example, evading police or showing false identification), we conclude that the State failed to establish that Mohamed knowingly possessed the khat with the knowledge that it contained cathinone.[13] Thus, the evidence was insufficient to support his convictions.

---

[12] The State presented no evidence to contradict Mohamed's assertion and instead submitted testimony by an expert conceding that cathinone degrades into cathine.

[13] See *Duvall*, 289 Ga. at 542. Compare *Serna v. State*, 308 Ga. App. 518, 521-522 (3) (707

2. In light of our holding in Division 1, we need not address Mohamed's remaining enumeration.

*Judgment reversed. Ellington, C. J., and Miller, J., concur.*

DECIDED FEBRUARY 16, 2012 — 

*Sidney L. Moore III*, for appellant.
*Tracy Graham-Lawson, District Attorney, Luana Popescu, Elizabeth A. Baker, Assistant District Attorneys*, for appellee.

---

SE2d 904) (2011) (defendant's use of "Amsterdam Poppers . . . to sedate his sexual battery victim . . . demonstrated [his] knowledge of the harmful effect of the compound and authorized the jury to conclude that [the defendant] intended to possess a dangerous drug, even if he was subjectively unaware of the precise chemical compound in the bottle and its regulated nature"); *Haire v. State*, 133 Ga. App. 12 (209 SE2d 681) (1974) (defendant's admission that he "had . . . a feeling" and "an assumption" that the knapsack he was carrying contained marijuana, coupled with his flight from the police and attempt to conceal the knapsack, constituted knowledge of the existence of marijuana sufficient to support his conviction for possession); *Mohamud*, 15 A3d at 91-92 (rejecting defendant's argument that he was not aware that khat contained cathinone based on defendant's admission that he possessed khat and that he knew it was "an illegal substance").