**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 13, 2013

# In the Court of Appeals of Georgia

A13A0812. BOOKER v. THE STATE.

BARNES, Presiding Judge.

This is a home invasion case in which the jury found Patrick Antwon Booker guilty of burglary, armed robbery, two counts of aggravated assault, kidnapping, two counts of possession of a firearm during the commission of a crime, and possession of a firearm by a first offender probationer. The jury acquitted Booker of several offenses, including malice murder, and the trial court declared a mistrial on a felony murder charge after the jury was unable to reach a verdict on that count. The trial court subsequently denied Booker's motion for new trial. On appeal, Booker contends that the trial court impermissibly bolstered the credibility of the State's witnesses by explaining the rule of sequestration to the jury. Booker further contends that the trial court's jury charge on malice murder and felony murder was improper because the

court instructed the jury on how to enter a verdict of guilty without also instructing them on how to enter a verdict of not guilty. Lastly, Booker contends that his trial counsel rendered ineffective assistance for failing to object to the aforementioned alleged errors by the trial court. For the reasons discussed below, we conclude that Booker's contentions are without merit and therefore affirm.[1]

Following a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict. See *Bryan v. State*, 271 Ga. App. 60 (1) (608 SE2d 648) (2004). So viewed, the evidence showed that on September 24, 2008, at approximately 2:00 a.m., a home invasion occurred at a mobile home in Columbia County. There were three victims of the home invasion – a man who died during the incident (the "decedent"), his girlfriend, and their infant son.

The home invasion transpired as follows. The decedent and his girlfriend awoke when they heard the sound of glass breaking followed by gun shots in their mobile home. According to the girlfriend, they then saw four armed men coming down the hallway towards them. The men demanded money, and when the decedent initially said that he had none, one of the men put his handgun in the mouth of the

---

[1] Two of the other robbers involved in the home invasion were tried separately from Booker and were convicted of multiple offenses, including malice murder and armed robbery. See *Butler v. State*, 290 Ga. 412 (721 SE2d 876) (2012).

infant and threatened to kill the infant and the decedent's girlfriend. One of the men also struck the girlfriend in the head with his handgun.

The decedent ultimately told the robbers that he had money over at his cousin's house, and the decedent's girlfriend offered to take the robbers there to retrieve it. Three of the robbers followed the girlfriend, who was holding her infant son, out the front door of the mobile home. Two of the robbers then went back inside the mobile home, while the third robber held a gun to the back of the girlfriend's head as she walked toward another home in the trailer park. However, the third robber eventually abandoned the girlfriend and ran back to the decedent's mobile home. At that point, the girlfriend began running with her infant through the trailer park to find help, and as she ran, she heard the decedent yelling as well as several gun shots. The girlfriend ran to a trailer where she knew the occupants, and they called 911 for her.

The police quickly responded to the scene. The decedent had sustained multiple gunshot wounds and was found unresponsive on the floor of the mobile home. He was rushed to the hospital, but he never regained consciousness and died from his wounds. Witnesses in the trailer park told the police that, after the gunshots were fired, two of the robbers fled from the scene in a red or burgundy Chevrolet Camaro,

and a be-on-the-lookout ("BOLO") was issued for the vehicle at approximately 2:20 a.m.

Within minutes, a patrol officer saw a Camaro matching the description given in the BOLO at a gasoline station. The Camaro, which had a male driver and passenger, pulled out of the station, and the officer subsequently stopped the vehicle at approximately 2:37 a.m. about 4.5 miles from the decedent's mobile home. The driver was identified as Booker, who was arrested at that point for certain motor vehicle-related offenses. The passenger was arrested after marijuana was found on his person during a pat-down search conducted as part of the stop.

After Booker and his passenger were arrested, they along with two other suspects were taken to the police department, where one-on-one "show-up" identifications were conducted with the decedent's girlfriend at approximately 5:25 a.m. When the girlfriend saw Booker, she immediately dropped to her knees, began to sob, and identified him as one of the robbers in the mobile home. She later confirmed that Booker was one of the robbers during her testimony at trial. In addition to identifying Booker, the girlfriend identified the passenger in the Camaro as one of the robbers, as well as one of the other suspects presented during the "show-up" procedure.

4

The police obtained a search warrant for the Camaro, and the officers who conducted the search found a glove in the vehicle that matched a glove found at the decedent's mobile home. A hollow-point .380-caliber R&P cartridge also was found in the Camaro that matched two cartridges found at the mobile home.

After being advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 S.Ct. 1602, 16 LE2d 694) (1966), Booker told an investigator that he had borrowed the Camaro and gone with his passenger to visit some women but had gotten lost. He denied having any involvement in the home invasion. However, when the investigator later re-interviewed Booker, he admitted to driving other armed men to the trailer park, but denied getting out of the Camaro during the home invasion.

1. Booker argues that the trial court erred by sua sponte instructing the jury on the rule of sequestration. After counsel had invoked the rule of sequestration and before the State's first witness was sworn and began to testify, the trial court explained to the jury:

> Ladies and gentlemen, the Rule of Sequestration has been invoked and what that rule requires is that the witnesses remain outside the presence of the courtroom while the testimony is given. It also requires that once a witness testify they not go out and tell the other witnesses what was said so there won't be any comparison of the stories. I'm requiring on both counsel to make sure your witnesses stay outside the courtroom

5

until they are called. . . . According to Booker, the trial court's explanation to the jury was an impermissible expression of opinion that bolstered the credibility of the State's witnesses and constituted reversible error under OCGA § 17-8-57. Booker's claim is without merit.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. Even if defense counsel fails to raise an objection, if the trial court violates this statutory provision, we are "required to order a new trial, and there can be no finding of harmless error." (Footnotes omitted.) *Sauerwein v. State*, 280 Ga. 438, 439 (2) (629 SE2d 235) (2006). See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010). However, "[a] ruling by the court on a point of law is not an expression of opinion[, and] neither are remarks by the court explaining the court's rulings." (Punctuation and footnotes omitted.) *Rogers v. State*, 294 Ga. App. 195, 196 (1) (670 SE2d 106) (2008).

The trial court's explanation of the rule of sequestration clearly was not a prohibited expression of opinion. The explanation was not a comment on the credibility of any of the witnesses and did not suggest that any given witness had violated the rule. Rather, it was a neutral explanation of the rule of sequestration that

6

did not favor either party, and, in this respect, the trial court specifically stated that the court was "requiring . . . *both counsel* to make sure that your witnesses stay outside the courtroom until they are called." (Emphasis supplied.) Accordingly, OCGA § 17-8-57 was not violated in this case. See *Watson v. State*, 278 Ga. 763, 769 (4) (604 SE2d 804) (2004) (charge to jury on rule of sequestration did not violate OCGA § 17-8-57); *Rogers*, 294 Ga. App. at 196 (1) (same).

2. Booker also argues that the trial court committed reversible error in its jury charge on malice murder and felony murder because the court instructed the jury on how to enter a verdict of guilty without also instructing them on how to enter a verdict of not guilty on those counts. We disagree.

Because Booker did not object to the jury charge regarding malice murder and felony murder, we review the charge only for plain error. See OCGA § 17-8-58 (b); *Kegler v. State*, 317 Ga. App. 427, 434 (3) (731 SE2d 111) (2012).

> Reversal based on plain error is authorized if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

7

(Citations and punctuation omitted.) *Jackson v. State*, 316 Ga. App. 588, 595-596 (5) (b) (730 SE2d 69) (2012). See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012); *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

Regardless of whether any of the other prongs were satisfied, there is no plain error because Booker cannot demonstrate that the alleged error in the jury charge likely affected the outcome of the proceedings. Booker was not convicted of either malice murder or felony murder, and thus cannot show that the alleged error in the jury charge pertaining to those offenses harmed him in any manner whatsoever. See *Knox v. State*, 290 Ga. App. 49, 54 (3) (658 SE2d 819) (2008) (an error in jury charge was harmless where charge related to offense of which defendant was acquitted); *Hurston v. State*, 278 Ga. App. 472, 475 (2) (629 SE2d 18) (2006) (error rendered harmless where jury was unable to reach a verdict on the counts of the indictment that would have been affected by the error).

3. Booker asserts that his trial counsel rendered ineffective assistance for failing to object when the trial court explained the rule of sequestration to the jury and when the trial court charged the jury on malice murder and felony murder. We disagree.

To prevail on a claim of ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), "[Booker] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Johnson v. State*, 281 Ga. 770, 771 (2) (642 SE2d 827) (2007). If Booker cannot establish one of the prongs of the *Strickland* test, he cannot prevail on his claim of ineffective assistance, and we need not examine the other prong. Id. at 771-772 (2).

As discussed supra in Division 1, the trial court's explanation to the jury of the rule of sequestration was not a prohibited expression of opinion, and, therefore, any objection would have been meritless. It follows that the trial counsel's failure to object did not constitute deficient performance and cannot support an ineffective assistance claim. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citation and punctuation omitted).

As discussed supra in Division 2, any alleged error in the trial court's charge on malice murder and felony murder did not affect the outcome of the proceedings because Booker was not convicted of either offense. For the same reason, Booker

9

cannot establish prejudice for his trial counsel's failure to object to the jury charge and thus cannot prevail on his claim of ineffective assistance.

*Judgment affirmed. Miller and Ray, JJ., concur.*