**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 22, 2021**

# In the Court of Appeals of Georgia

A20A2067. ROUNDTREE v. THE STATE.

DILLARD, Presiding Judge.

Kenneth Roundtree appeals from his convictions for possession of cocaine and possession of a controlled substance. In doing so, Roundtree argues that (1) there is insufficient evidence to sustain his convictions, (2) the trial court erred by failing to repeat jury instructions or answer a jury question during deliberations, and (3) a new trial should have been granted based upon the general grounds. For the reasons set forth *infra*, we affirm in part and reverse in part.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that officers made contact with Roundtree—who is homeless—because he had a probation warrant. He was taken into custody and, thereafter, searched pursuant to arrest. During this search, an officer found a folded napkin in Roundtree's left front pants pocket. A small green bag was inside of the napkin, and two additional green bags were discovered inside Roundtree's other pocket. Each bag contained residue of a white, powdery substance. Roundtree told the officers that he collected bags like this "all the time," he found these particular bags near a local park, and he picked them up because children "might get the baggies and put it in their mouth and they won't be able to handle it like a grown folk will." The bags later tested positive for cocaine, and further testing revealed that the residue was a mixture of cocaine and a substance called Alpha-PVP.

Roundtree was subsequently indicted on one count of possession of a controlled substance and one count of possession of cocaine. After a trial by jury, he was convicted on both counts. Roundtree thereafter filed a motion for new trial and

---

[1] *See, e.g.*, *Freeman v. State*, 329 Ga. App. 429, 431 (1) (765 SE2d 631) (2014) ("[W]hen a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence." (punctuation omitted)).

amended motion for new trial, which the trial court ultimately denied. This appeal follows.

1. Roundtree contends that there was insufficient evidence to sustain his convictions. And while we disagree that the State failed to present sufficient evidence as to the possession-of-cocaine count, we do agree with Roundtree that the evidence was insufficient as to the possession-of-a-controlled-substance count.

On appeal, we view the evidence in the light most favorable to the jury's verdicts, and it "must be sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt."[2] In doing so, we must set aside any questions "about conflicting evidence, the credibility of witnesses, or the weight of

---

[2] *Carter v. State*, 307 Ga. 456, 458 (836 SE2d 84) (2019). Separately, Roundtree also maintains that the trial court erred in failing to grant his motion for a directed verdict, but this is essentially the same enumeration of error, reviewed under the same standard. *See, e.g.*, *Dupree v. State*, 303 Ga. 885, 886 (1) (815 SE2d 899) (2018) ("The test . . . that the evidence viewed in the light most favorable to the jury's verdict must be sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt, is the proper standard of review when the sufficiency of the evidence is challenged. This is so whether the challenge arises from the denial of a motion for directed verdict or the denial of a motion for new trial or a challenge to a conviction on direct appeal." (citation & footnote omitted)).

the evidence, leaving the resolution of such things to the discretion of the trier of fact."[3]

Here, Roundtree was indicted for possession of cocaine in that he did "unlawfully possess cocaine, a Schedule II controlled substance, in violation of the Georgia Controlled Substances Act[.]"[4] He was further indicted for "possession of a controlled substance" in that he did "unlawfully possess Alpha-PVP (alpha-pyrrolidinopentiophenone), a Schedule 1 controlled substance, in violation of [OCGA] § 16-13-30 (a) . . . ." For each count, Roundtree argues that the evidence was insufficient to show that he knew the bags in his possession contained residue of controlled substances.

As our Supreme Court has explained, "[p]ossession of a controlled substance is not a strict liability offense."[5] So, the criminal intent required by OCGA § 16-13-

---

[3] *Carter*, 307 Ga. at 458.

[4] *See* OCGA § 16-13-30 (a) ("Except as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."); *see also* OCGA § 16-13-26 (1) (D) (providing that "cocaine" is a Schedule II controlled substance).

[5] *Duvall v. State*, 289 Ga. 540, 542 (712 SE2d 850) (2011); *accord Patterson v. State*, 328 Ga. App. 111, 117 (4) (761 SE2d 524) (2014); *Cooper v. State*, 315 Ga. App. 773, 774 (1) (728 SE2d 289) (2012); *see Mohamed v. State*, 314 Ga. App. 181, 183 (1) (723 SE2d 694) (2012) ("[T]he [Supreme] Court explained that possession

4

30 (a) is the "intent to possess a drug with knowledge of the chemical identity of that drug."[6] And the question of the "accused's knowledge of the chemical identity of an illegal substance is purely a question of fact."[7] With this in mind, we will address each conviction separately.

a. *Possession of Cocaine.*

As to possession of cocaine, the law-enforcement officer who found the bags testified that, based upon his training and experience, people will collect bags of residue in order to accumulate enough to ingest or to sprinkle into cigarettes. But the officer also testified that he did not find any cigarettes on Roundtree's person, nor did he find any other drug paraphernalia such as a pipe, cutting blade, or syringe.

---

of a controlled substance would be a strict liability offense [without knowledge of the drug's chemical identity].").

[6] *Duvall*, 289 Ga. at 542; *accord Patterson*, 328 Ga. App. at 117 (4); *Cooper*, 315 Ga. App. at 774 (1); *Mohamed*, 314 Ga. App. at 183 (1); *see Awtrey v. State*, 346 Ga. App. 892, 896-97 (1) (b) (815 SE2d 655) (2018) ("[O]ur Supreme Court has made clear that the crimes listed in OCGA § 16-13-30 are not strict liability crimes, and the criminal intent required by that section is the intent to possess, sell, or distribute 'a drug with knowledge of the chemical identity of that drug.'").

[7] *Awtrey*, 346 Ga. App. at 897 (1) (b); *see Duvall*, 298 Ga. at 542 ("Appellant's knowledge of the chemical identity of the substance in his possession is purely a question of fact."); *Cooper*, 315 Ga. App. at 774 (1) ("Appellant's knowledge of the chemical identity of the substance in his possession is purely a question of fact that should ordinarily be determined by a jury." (punctuation omitted)).

Nevertheless, Roundtree testified in his own defense and explained why he picked up the bags: "You know, the young fellows, they go out there and they smoke, but they just throw their baggies and stuff down, so my concern is little kids going and playing in the park and they might get the baggies and put it in their mouth and they won't be able to handle it like a grown folk will." And although he denied knowing the bags contained cocaine residue, he admitted to having previously been convicted for sale of cocaine and, thus, knowing what cocaine looks like.

Needless to say, a jury may find criminal intention, "*i.e.*, knowledge, 'upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.'"[8] And given the foregoing testimony by Roundtree himself, the jury was presented with sufficient circumstantial evidence by which to conclude that he knew the three bags in his possession contained cocaine residue.[9]

---

[8] *Freeman*, 329 Ga. App. at 432 (1), *quoting* OCGA § 16-2-6; *accord Brown v. State*, 334 Ga. App. 674, 677 (780 SE2d 372) (2015) (physical precedent only); *Summerville v. State*, 332 Ga. App. 617, 619 (1) (774 SE2d 190) (2015).

[9] *See Freeman*, 329 Ga. App. at 432 (1) (finding sufficient circumstantial evidence that defendant knew weight of cocaine in his possession by evidence that amount was nearly two times the threshold for trafficking and defendant had prior convictions for possession of cocaine with intent to distribute); *Cooper*, 315 Ga. App. at 775 (1) (affirming conviction for possession because "[t]he jury was not required

b. *Possession of Alpha-PVP (alpha-pyrrolidinopentiophenone).*

As to the possession of a controlled substance, namely "Alpha-PVP (alpha-pyrrolidinopentiophenone)," the State failed to present sufficient evidence as to this count because "Alpha-PVP (alpha-pyrrolidinopentiophenone)" is not listed in any of the controlled substance schedules.[10] Nor was there testimony or other evidence that

to accept as true [the defendant's] assertion that he believed the pills were a different Schedule I controlled substance" and "[i]t is the jury's prerogative to choose what evidence to believe and what to reject").

[10] *Compare* OCGA § 16-13-24 (a) ("There are established five schedules of controlled substances, to be known as Schedules I, II, III, IV, and V. The schedules shall consist of the substances listed in Code Sections 16-13-25 through 16-13-29. The schedules so established shall be updated and republished by the State Board of Pharmacy on an annual basis."); OCGA § 16-13-25 (listing Schedule I controlled substance); OCGA § 16-13-26 (listing Schedule II controlled substances); OCGA § 16-13-27 (listing Schedule III controlled substances); OCGA § 16-13-27.1 (listing specific exemptions from Schedule III); OCGA § 16-13-28 (listing Schedule IV controlled substances); OCGA § 16-13-29 (listing Schedule V controlled substances), *with* 21 CFR § 1308.11 (d) (61) (including "alpha-pyrrolidinopentiophenone (a-PVP)" as a Schedule I DEA controlled substance); MISS. CODE ANN. § 41-29-113 (f) (9) (B) (iii) (listing as a Schedule 1 controlled substance "stimulants," including "synthetic cathinones," and specifically listing "Alpha-pyrrolidinopentiophenone ('a-PVP')"); N.D.C.C. § 19-03.1-05 (7) (c) (4) (q) (listing Schedule I controlled substances, including "stimulants" such as "substituted cathinones," and naming"Alpha-pyrrolidinopentiophenone (also known as Alpha-pyrrolidinovalerophenone or alpha-PVP"); N.J.S.A. 2C:35-5.3a (a) ("It is a crime for any person knowingly or purposely to manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute, or dispense substances containing . . . alpha-pyrrolidinopentiophenone (alpha-PVP)."); W. VA. CODE § 60A-2-204 (f) (including in Schedule 1 list of controlled substances

7

"Alpha-PVP (alpha-pyrrolidinopentiophenone)" is chemically related to any listed controlled substance.[11] Indeed, the forensic chemist only referred to the drug as Alpha-PVP and was never questioned about its specific chemical properties or other information that might link it to a listed controlled substance. Nor did the State elicit any such testimony from its law-enforcement witness who was admitted as an expert in use and possession of cocaine and Alpha-PVP. As a result, the State failed to present sufficient evidence to sustain Roundtree's conviction on the count for possession of "Alpha-PVP (alpha-pyrrolidinopentiophenone)" as a controlled

"Alpha-pyrrolidinopentiophenone, also known as alpha-PVP, optical isomers, salts and salts of isomers").

[11] *See, e.g.*, OCGA § 16-13-35 (3) (GG) (including in the list of Schedule 1 controlled substances "[a]ny material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers (whether optical, position, or geometrics), and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation" and specifically listing "Cathinone"); *see also Amin v. State*, 317 Ga. App. 685, 685-86 (1) (732 SE2d 340) (2012) (holding that evidence was insufficient to show that defendant, who knew he was in possession of "khat," also knew he was in possession of controlled substance cathinone, which is contained in "khat" at different periods of time); *Mohamed*, 314 Ga. App. at 183-84 (1) (holding State failed to establish defendant, who was born in Somalia, knowingly possessed "khat," a plant chewed or made into tea in some cultures, with knowledge it contained cathinone, and thus evidence was insufficient to support conviction for possession of cathinone, a Schedule I controlled substance).

substance because it failed to present evidence that the substance in Roundtree's possession was controlled.[12]

2. Next, Roundtree contends that the trial court erred by failing to repeat jury instructions or answer a jury question during deliberations. We disagree.

The record shows that during the charge to the jury, the trial court instructed the jury on knowledge as follows:

---

[12] *See DeLong v. State*, 310 Ga. App. 518, 522 (2) (714 SE2d 98) (2011) (reversing conviction for distribution of a controlled substance when "Ambien," as drug was referenced at trial, is not listed as a controlled substance and State failed to present evidence showing that "Ambien" is "Zolpidem," which *is* listed as a controlled substance); *see also Elrod v. State*, 143 Ga. App. 331, 331 (238 SE2d 291) (1977) ("[Because] there is no testimony that Demerol is the equivalent of a controlled substance, [the Code section] which dictates inclusion of the trade name in controlled drug schedules cannot aid the state. Before [the Code section] is operative the trade name must be linked to its scheduled equivalent. As the state failed to carry its burden of proving by competent evidence that the drug Demerol was a narcotic regulated by law, it was error to deny defendant's motion for a directed verdict of acquittal."). *Cf. Tant v. State*, 247 Ga. 264, 267 n.1 (275 SE2d 312) (1981) (citing *Elrod* with approval to note that "[i]t has been held that the generic equivalent of a trade name is not the proper subject of judicial notice" but distinguishing itself from *Elrod* because "the testimony as to the trade name, Quaaludes, in this case was sufficiently connected with the generic equivalent, methaqualone, by the description of the pills, or tablets, by the witnesses and by the crime lab report"); *Hulsey v. State*, 220 Ga. App. 64, 64-65 (467 SE2d 610) (1996) (holding that State sufficiently linked trade name to controlled substance); *Crosby v. State*, 150 Ga. App. 804, 805 (4) (258 SE2d 593 (1979) (distinguishing *Elrod* and holding that State met burden of proof through testimony using controlled substance's name as listed in Act).

9

Knowledge on the part of the defendant that the crimes of count one, [violating the Georgia Controlled Substances Act "VGCSA"], possession of cocaine, and count two, VGCSA, possession of a controlled substance were being committed and the defendant knowingly and intentionally participated in or helped in the commission of such crime must be proved by the State beyond a reasonable doubt. If you find from the evidence in this case that the defendant had no knowledge that a crime was being committed or that the defendant did not knowingly and intentionally commit, participate, or help in the commission of the alleged offense, then it would be your duty to acquit the defendant.

On the other hand, should you find beyond a reasonable doubt that the defendant had knowledge of the crimes of count one, VGCSA, possession of cocaine, and count two, VGCSA, possession of a controlled substance, were being committed and that the defendant knowingly and intentionally participated or helped in the commission of it, then you would be authorized to convict the defendant.

The evidence must show beyond a reasonable doubt that the defendant had knowledge that he was in possession of the controlled substances named in the indictment.

Thereafter, during deliberations, the jury asked the trial court whether Roundtree had "to have knowledge of what he possessed?" In response, the judge instructed the jury to refer to "the charge that I've already given you a few minutes ago" because it

10

"discussed that particular matter." Of note, neither the State nor Roundtree objected to this answer, and the jury did not ask any additional questions before returning its verdict.

Roundtree argues on appeal that the trial court abused its discretion by failing to recharge the jury on knowledge. But because Roundtree's trial counsel did not object at trial, we review this enumeration for plain error only.[13] And reversal based on plain error is authorized only if "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[14]

---

[13] *See* OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."); *Weyer v. State*, 333 Ga. App. 706, 714 (2) (776 SE2d 304) (2015) ("[B]ecause [the defendant] did not object to the trial court's supplemental instructions, we review the instructions only for plain error."); *Booker v. State*, 322 Ga. App. 257, 260 (2) (744 SE2d 429) (2013) ("Because [the defendant] did not object to the jury charge regarding malice murder and felony murder, we review the charge only for plain error.").

[14] *Booker*, 322 Ga. App. at 260 (2) (punctuation omitted); *see Weyer*, 333 Ga. App. at 714 (2) ("There are four prongs to consider when analyzing a jury charge for plain error: First, there must be an error or defect—some sort of a deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or

11

Suffice it to say, satisfying all four prongs of this standard is demanding, "as it should be."[15]

It is well established that when a jury does not ask the trial court to recharge its instructions, but rather to expound on them, it is "within the trial court's sound discretion to determine the need, breadth, and formation of any additional jury instructions."[16] And here, the jury did not ask the court to recharge them as to knowledge, only whether Roundtree had "to have knowledge of what he possessed[.]"

---

obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (punctuation omitted)).

[15] *Booker*, 322 Ga. App. at 260 (2) (punctuation omitted); *accord State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

[16] *Weyer*, 333 Ga. App. at 714 (2) (punctuation omitted); *see Holloman v. State*, 291 Ga. 338, 344 (7) (729 SE2d 344) (2012) ("Certainly, a trial court has a duty to recharge the jury regarding issues for which the jury so requests a recharge. But, that is not what happened in this case. The jury did not ask for the court to recharge its instructions, but rather to expound on them. Thus, it was within the trial court's sound discretion to determine the need, breadth, and formation of any additional jury instructions." (citation omitted)). *Cf. Edwards v. State*, 233 Ga. 625, 626 (2) (212 SE2d 802) (1975) ("When the jury requests the court to recharge them on any point, it is the court's duty to do so.").

As a result, the trial court did not abuse its discretion by referring the jury to its previous charge as to knowledge to answer that question and, thus, Roundtree failed to establish that the court erred, much less plainly erred.[17]

3. Finally, Roundtree asserts that the trial court erred in failing to grant his motion for new trial based upon the "general grounds" of OCGA §§ 5-5-20 and 5-5-21. Once again, we disagree.

---

[17] *See Weyer*, 333 Ga. App. at 715-16 ("[The defendant] has failed to prove that the trial court committed any error in its fashioning of a supplemental instruction to the jury regarding the definition of 'entice,' and thus the first prong of the test for plain error has not been satisfied."); *Lovelace v. State*, 262 Ga. App. 690, 694 (5) (586 SE2d 386) (2003) ("Our Supreme Court ruled that the trial court erred in not recharging the jury because if the jury requests a recharge on any issue, it is the court's duty to do so. Here, however, the jury did not ask for a recharge. Supplemental instructions to the jury are generally within the discretion of the trial court. In these circumstances, we cannot say that it was an abuse of discretion for the trial court to decline to further instruct the jury." (footnotes omitted)). *Cf. Dill v. State*, 277 Ga. 150, 152-53 (2) (587 SE2d 56) (2003) ("In its response to the jury, the trial court reiterated the definition of malice murder but refused to recharge the jury on the issues of presence and knowledge, despite the fact that these issues were indisputably pertinent to the jury's request. By refusing the jury's specific request for clarification on issues of presence and knowledge, the trial court undercut the relevance of these issues in the jury's deliberations and effectively undermined [the defendant's] right to have the jury fairly and completely consider these aspects of his defense."); *Edwards*, 233 Ga. at 626 (2) ("It is obvious from the court's statement that the jury had communicated a request to him for a recharge on murder and manslaughter, and that he had refused to do this. This was error.").

On a motion for new trial, even if the evidence is legally sufficient to sustain a conviction,[18] the trial court may order a new trial as the thirteenth juror only if the "verdict of a jury is found contrary to evidence and the principles of justice and equity"[19] *or* if the verdict is "decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."[20] Importantly, OCGA §§ 5-5-20 and 5-5-21 afford the trial court "broad discretion to sit as a 'thirteenth juror' and weigh the evidence on a motion for new trial alleging these general grounds."[21] And in exercising discretion as the "thirteenth juror," the trial court must consider some of the things it cannot when "assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence."[22] Even so, the trial court's

---

[18] Because we have already determined that there was insufficient evidence to convict Roundtree on possession of a controlled substance, we concern ourselves here only with the trial court's review of the conviction for possession of cocaine.

[19] OCGA § 5-5-20.

[20] OCGA § 5-5-21.

[21] *Holmes v. State*, 306 Ga. 524, 527 (2) (832 SE2d 392) (2019) (punctuation omitted); *accord Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013).

[22] *Wiggins v. State*, 330 Ga. App. 205, 210 (c) (767 SE2d 798) (punctuation omitted); *accord White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013).

14

discretion to grant a new trial under these circumstances "should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."[23] Furthermore, we presume, in the absence of affirmative evidence to the contrary, that the trial court "properly exercised its discretion [under] OCGA §§ 5-5-20 and 5-5-21."[24]

In this case, the trial court's order sets forth the standards applicable to OCGA §§ 5-5-20 and 5-5-21, respectively, considers the evidence presented at trial in support of Roundtree's conviction for possession of cocaine, and then explains the decision not to exercise its discretion to grant a new trial as the thirteenth juror. Thus, the order "clearly indicates that [the court] properly performed its duty to exercise its discretion and weigh the evidence in consideration of the general grounds."[25] And as our Supreme Court has previously explained,

---

[23] *Wiggins*, 330 Ga. App. at 210 (c) (punctuation omitted); *accord White*, 293 Ga. at 524-25 (2).

[24] *Holmes*, 306 Ga. at 528 (2) (punctuation omitted).

[25] *Hamlette v. State*, 353 Ga. App. 640, 650 (5) (839 SE2d 161) (2020); *see Allen v. State*, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (holding that record indicated trial court properly exercised its discretion under OCGA §§ 5-5-20 and 5-5-21 when it stated it would not grant a new trial as "the thirteenth juror" (citation & punctuation omitted)).

15

OCGA § 5-5-20, *i.e.*, that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. Whether to grant a new trial based on OCGA § 5-5-21, *i.e.*, that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial court, and the appellate courts do not have the same discretion to order new trials.[26]

So, even when we are asked to review a trial court's refusal to grant a new trial on the general grounds, we must review the evidence in the light most favorable to the prosecution and determine whether it supports the verdict or verdicts.[27] And as explained in Division 1 (a) *infra*, the evidence was sufficient to support Roundtree's conviction for possession of cocaine.

---

[26] *Allen*, 296 Ga. at 741 (2) (citation & punctuation omitted); *accord Hamlette*, 353 Ga. App. at 650 (5).

[27] *See Allen*, 296 Ga. at 741 (2) ("[E]ven when an appellant asks this Court to review a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in *Jackson v. Virginia*, [443 US 307 (99 SCt 2781, 61 LE2d 560) (1979)], that is, if the evidence viewed in the light most favorable to the prosecution, supports the verdict or verdicts." (punctuation omitted)); *Williams v. State*, 296 Ga. 573, 574 (769 SE2d 318) (2015) (same).

16

For all these reasons, we affirm Roundtree's conviction for possession of cocaine and reverse his conviction for possession of a controlled substance, namely Alpha-PVP.

*Judgment affirmed in part and reversed in part. Rickman, P. J., and Brown, J., concur.*