**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 22, 2023

# In the Court of Appeals of Georgia

A23A0559. TATE-JESURUM v. THE STATE.

RICKMAN, Chief Judge.

In this interlocutory appeal, Leonard Antonio Tate-Jesurum appeals from the trial court's denial of his general demurrer and plea in bar. He argues that the trial court erred by denying the general demurrer when the accusation against him failed to allege the necessary mens rea, and by denying his plea in bar when the allegedly void accusation did not toll the statute of limitations. For the following reasons, we affirm.

On July 2, 2020, Tate-Jesurum was charged via accusation with a single count of possession of methamphetamine, which alleged that he "on or about the 27th day of February, 2018, did unlawfully possess Methamphetamine, a Schedule II non-narcotic controlled substance, in violation of [OCGA] § 16-13-30 (a) . . . ."

On July 14, 2022, Tate-Jesurum filed a general demurrer and plea in bar to this charge. In doing so, he asserted that the accusation for possession of methamphetamine failed to allege all of the required elements of that offense—namely, the necessary mens rea that he *knowingly* possessed the chemical identified as methamphetamine. And because he alleges that failure rendered the accusation against him void, he contends that the four-year statute of limitations for possession of methamphetamine[1]—having already expired—barred his prosecution for the offense because a void accusation does not toll the limitations period.

Following a hearing on the matter, the trial court denied both the general demurrer and plea in bar, relying on this Court's decision in *Dye v. State*, 177 Ga. App. 813 (341 SE2d 469) (1986), *overruled on other grounds by Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990). In *Dye*, the charging instrument—like the accusation against Tate-Jesurum—alleged the defendant "unlawfully" possessed cocaine, and we held that "unlawfully" encompassed both intent and knowledge. See id. at 813 (1) ("The allegation that appellant acted 'unlawfully' is sufficient to encompass both the

---

[1] *See* OCGA § 17-3-1 (c) ("Except as otherwise provided in Code Section 17-3-2.1, prosecution for felonies other than those specified in subsections (a), (b), and (d) of this Code section shall be commenced within four years after the commission of the crime . . . .").

intent to commit the proscribed act and the knowledge necessary to form that intent."). In reliance on *Dye*, the trial court concluded that the accusation against Tate-Jesurum included all necessary elements and was not subject to a general demurrer. Nevertheless, the trial court issued a certificate of immediate review, and we granted Tate-Jesurum's application for interlocutory appeal, which we will now consider.[2]

Tate-Jesurum argues the trial court erred by denying his general demurrer when the accusation did not expressly allege that he *knowingly* possessed the chemical identified as methamphetamine. We disagree.

Georgia statutory law provides that a criminal indictment or accusation "which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." OCGA § 17-7-54 (a). Likewise, deeply embedded within our case law is the concept that a charging instrument that tracks the statutory language of a criminal offense is sufficient to survive a general demurrer. See *State v. Mondor*, 306 Ga. 338, 341 (1) (830 SE2d 206) (2019) ("[A]n indictment couched

_____

[2] We review a trial court's ruling on a general demurrer de novo. *See Stapleton v. State*, 362 Ga. App. 740, 741 (1) (869 SE2d 83) (2021).

3

in the language of the statute alleged to have been violated is not subject to a general demurrer.") (citation and punctuation omitted); *McKibbins v. State*, 293 Ga. 843, 848 (2) (750 SE2d 314) (2013) ("[A]n indictment which charges a defendant with the commission of a crime in the language of a valid statute generally is sufficient to withstand a demurrer charging that the indictment is insufficient to charge the defendant with any offense.") (citation and punctuation omitted); *Stewart v. State*, 246 Ga. 70, 72 (2) (268 SE2d 906) (1980) ("An indictment which charges a defendant with the commission of a crime in the language of a valid statute is sufficient to withstand a demurrer charging that the indictment is insufficient to charge the defendant with any offense under the laws of this state."); *Hester v. State*, 17 Ga. 130, 132 (1) (1855) ("Every indictment or accusation of the Grand Jury, shall be deemed sufficiently technical and correct, which states the offence in the terms and language of the Code . . . .") (citation and punctuation omitted).

Here, Tate-Jesurum was accused of a violation of the Georgia Controlled Substances Act, specifically, possession of methamphetamine. The relevant criminal statute provides that, "it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance." OCGA § 16-13-30 (a). Methamphetamine is defined as a Schedule II non-narcotic controlled substance. See

4

OCGA § 16-13-26 (3) (B). The charging document accused Tate-Jesurum with the offense of possession of methamphetamine in that he "did unlawfully possess Methamphetamine, a Schedule II non-narcotic controlled substance, in violation of OCGA § 16-13-30 (a), contrary to the laws of said State. . . ." As such, the accusation set forth the offense in the terms and language of the relevant criminal statute and was sufficient to survive a general demurrer. See OCGA § 17-7-54 (a); *Budhani v. State*, 306 Ga. 315, 319-320 (1) (b) (830 SE2d 195) (2019) (holding indictment for possession of a controlled substance was not void because it "tracked the language of the relevant statute" and identified the controlled substance); see also *Smith,* 303 Ga. at 647 (A); *Wyatt*, 295 Ga. at 260 (2).

Nevertheless, Tate-Jesurum argues, and the dissent agrees, that in *Duvall v. State*, 289 Ga. 540 (712 SE2d 850) (2011), the Supreme Court abrogated, within the context of an indictment alleging possession of a controlled substance in violation of OCGA § 16-13-30 (a), both the legislative directive of OCGA § 17-7-54 (a) and the well-established pleading rules upon which courts and prosecutors of this State alike have relied upon for decades. But *Duvall* cannot be so construed.

To be sure, the *Duvall* Court held that possession of a controlled substance is not a strict liability offense and, therefore, the State must prove that an accused both

knowingly possessed a drug and also knew that the drug he or she possessed was a controlled substance. 289 Ga. at 542. But the question before the Court in *Duvall* was not the sufficiency of the indictment; rather, the question was whether the appellant should have received at trial a jury instruction on mistake of fact because of his defense that he knew he possessed a drug, but believed that what he possessed was an over-the-counter sleeping medication. Id. at 541-542. The Court recognized that the question of whether appellant knowingly possessed a controlled substance was a question of fact and, consequently, concluded the trial court committed reversible error by failing to give the jury instruction. Id. at 542.

Nothing in *Duvall* suggests that the Court intended to create a judicial exception to both statutory and common law regarding the required elements of a charging instrument. Indeed, "criminal intent is an essential element of every crime where criminal negligence is not involved." (Citation and punctuation omitted.) *Wright v. State*, 365 Ga. App. 288, 290 (1) (878 SE2d 137) (2022); see OCGA § 16-2-1 (a) (defining a "crime" as "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence."). And as stated by the Supreme Court and consistently held by this Court, in the absence of an express, statutorily-defined mens rea element, the

6

allegation of criminal intent is "necessarily inferred" from an indictment that "charges [an] offense in the language of the statute and alleges it was committed 'unlawfully.'" *Humphrey v. State*, 231 Ga. 855, 861 (IV) (204 SE2d 603) (1974); see also *Tidwell v. State*, 216 Ga. App. 8, 10 (1) (453 SE2d 64) (1994) ("The allegation that the men acted 'unlawfully,' with reference to the specific Code section which made the conduct unlawful, sufficiently included the intent to commit the criminal act and the knowledge necessary to form such intent."); *Dye*, 177 Ga. App. at 813 (1) ("The allegation that appellant acted 'unlawfully' is sufficient to encompass both the intent to commit the proscribed act and the knowledge necessary to form that intent."). Compare *Henderson v. Hames*, 287 Ga. 534, 537-538 (3) (697 SE2d 798) (2010) (an indictment omitting an express, statutorily-defined mens rea element is fatally defective).

The accusation in this case charged Tate-Jesurum with "unlawfully" possessing a named controlled substance in violation of OCGA § 16-13-30 (a) by tracking the language of that statute. As such, it was legally sufficient, and the trial court did not err by denying both the general demurrer and the plea in bar. See OCGA § 17-7-54 (a); *Budhani*, 306 Ga. at 319-320 (1) (b).

*Judgment affirmed. Pipkin J., concurs; Dillard, P.J., dissents*.

7

# In the Court of Appeals of Georgia

A23A0559.  TATE-JESURUM v. THE STATE.

DILLARD, Presiding Judge, dissenting.

In affirming the denial of Tate-Jesurum's general demurrer and plea in bar, the majority draws a strict demarcation line between the pleading requirements of a charging document and the elements of proof necessary to establish the commission of a crime at trial. But this line is illusory. The relevant, binding case law dictates

8

that—because the charging document against him is void due to the omission of the necessary element of *mens rea*—Tate-Jesurum's general demurrer on this ground should have been granted, as well as his plea in bar. So, I respectfully dissent.

Tate-Jesurum argues the trial court erred by denying his general demurrer and plea in bar[3] when the accusation did not include the necessary element that he *knowingly* possessed the chemical identified as methamphetamine. In doing so, he contends that *Dye v. State*[4]—which the trial court and the majority both heavily rely upon in making their decisions—has been abrogated by subsequent opinions from the Supreme Court of Georgia. I agree.

We review a trial court's ruling on a general demurrer *de novo*.[5] And every indictment of the grand jury which states the offense in the terms and language of the

---

[3] *See Davis v. State*, 307 Ga. 784, 786-87 (838 SE2d 233) (2020) (noting that "[a]lthough not specifically defined by Georgia statute, pleas in bar originate from English common law," and "[a] plea in bar is a challenge to the validity of an indictment"), *relying on* Joel P. Bishop, *Commentaries on the Law of Criminal Procedure* § 420 (1866) (collecting common-law sources and explaining that "[through] a plea in bar the defendant shows, by matter extrinsic of the record, that the indictment is not maintainable").

[4] 177 Ga. App. 813 (341 SE2d 469) (1986), *overruled on other grounds by Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990).

[5] *See Stapleton v. State*, 362 Ga. App. 740, 741 (1) (869 SE2d 83) (2021); *accord Woods v. State*, 361 Ga. App. 844, 846 (864 SE2d 194) (2021).

Georgia Code or so plainly that "the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct."[6] But importantly, an indictment is to be "strictly construed against the State when a general demurrer has been filed against it."[7] As a result, to withstand a general demurrer, an indictment must "(1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish violation of a criminal statute."[8] If either of these requisites is met, then the accused "cannot admit the allegations of the indictment and yet be not guilty of the crime charged."[9]

---

[6] OCGA § 17-7-54 (a).

[7] *Stapleton*, 362 Ga. App. at 741 (1) (punctuation omitted); *accord Yeamans v. State*, 366 Ga. App. 780, 783 (1) (884 SE2d 380) (2023).

[8] *Jackson v. State*, 301 Ga. 137, 141 (1) (800 SE2d 356) (2017); *accord Budhani v. State*, 306 Ga. 315, 319 (1) (a) (830 SE2d 195) (2019); *see Bennefield v. State*, 304 Ga. 491, 494-95 (2) (b) (819 SE2d 10) (2018) ("The indictment uses the language of the applicable statutes, including the essential elements of each offense, and is sufficiently definite to have advised [appellant] of what he must have been prepared to confront."), *overruled on other grounds by Collier v. State*, 307 Ga. 363 (834 SE2d 769) (2019).

[9] *Jackson*, 301 Ga. at 141 (1); *accord Budhani*, 306 Ga. at 319 (1) (a).

With the foregoing in mind, I return to *Dye v. State*[10]—which the trial court, State, and majority all rely upon in concluding the accusation here was not subject to a general demurrer. In *Dye*, we relied generally on *McDonald v. State*,[11] in which the Supreme Court of Georgia explained that an indictment "couched in the language of the statute" was "not subject to general demurrer."[12] Specifically, the *McDonald* Court noted the indictment's use of "unlawfully" was the "substantial equivalent" of charging that the defendant "wilfully" failed to mail and deliver a certificate of title and manufacturer's serial plate from a motor vehicle to the State Revenue Commissioner as required by law.[13]

Interestingly, since being published in 1986, *Dye* has only been relied upon for the relevant proposition twice. In *Tidwell v. State*,[14] we concluded that use of "unlawfully" in a charge of leaving the scene of an accident with death and serious

---

[10] 177 Ga. App. 813 (341 SE2d 469) (1986), *overruled on other grounds by Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990).

[11] 222 Ga. 596 (151 SE2d 121) (1966).

[12] *Id.* at 596 (1). Only one other case besides *Dye* appears to have cited *McDonald* for this proposition. *See Garvey v. State*, 176 Ga. App. 268, 273 (5) (335 SE2d 640) (1985) (relying on *McDonald*).

[13] *McDonald*, 222 Ga. at 596-97 (1).

[14] 216 Ga. App. 8 (453 SE2d 64) (1994).

11

bodily injury[15] "sufficiently included the intent to commit the criminal act and the knowledge necessary to form such intent."[16] *Dye* was also relied upon in *Frost v. State*,[17] in which—for a charge of arson—we held that use of the word "unlawfully" in the indictment—instead of "knowingly"—did not fail to charge the defendant with "a crime by the omission of the element of intent, nor did it fail to put defendant on notice that she was charged with committing the act with intent rather than with criminal negligence."[18] And both *Tidwell* and *Frost* have been relied upon by this Court for *Dye*'s relevant proposition in a number of cases throughout the years.[19]

---

[15] *See* OCGA § 40-6-270 (a) ("The driver of any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident . . .").

[16] *Tidwell*, 216 Ga. App. at 10 (1).

[17] 200 Ga. App. 267 (407 SE2d 765) (1991).

[18] *Id.* at 269 (2).

[19] *Frost* was relied upon in *Morris v. State*, 310 Ga. App. 126, 130 (2) (712 SE2d 130) (2011); *Phillips v. State*, 278 Ga. App. 198, 202 (2) (a) (628 SE2d 631) (2006); *State v. Meadows*, 252 Ga. App. 376, 377 (556 SE2d 479) (2001); *Bowman v. State*, 227 Ga. App. 598, 601 (1) (490 SE2d 163) (1997); *State v. Bolman*, 222 Ga. App. 534, 534 (474 SE2d 721) (1996); and *Joiner v. State*, 204 Ga. App. 592, 593 (3) (420 SE2d 73) (1992). *Tidwell* was relied upon in dicta in *Sevostiyanova v. State*, 313 Ga. App. 729, 741-42 (18) (722 SE2d 333) (2012).

12

But the jurisprudential landscape has changed dramatically since *Dye* and most of its progeny were decided.[20] Indeed, as the Supreme Court of Georgia has explained, the omission of *mens rea* from an indictment renders the charging instrument void[21] because it is "an essential element of a crime."[22] And in doing so, our Supreme Court noted that if an indictment "fails to allege all the essential

---

[20] *See supra* notes 8 to 17 & accompanying text.

[21] *See Henderson v. Hames*, 287 Ga. 534, 538 (3) (697 SE2d 798) (2010) (holding that omission of statutory *mens rea* element rendered indictment void); *see also State v. Wilson*, 318 Ga. App. 88, 95 (1) (c) (i) (732 SE2d 330, 337-38) (2012) (considering the validity of an indictment that charged the defendant with "unlawfully" making an assault rather than "knowingly" making an assault on a police officer and holding that, "pretermitting whether this count sufficiently charged [the defendant] with assaulting someone he knows is a peace officer, under OCGA § 16-5-21 (c), he still cannot admit to these allegations without being guilty of committing the lesser included offense of aggravated assault under OCGA § 16-5-21 (a) (2)," and thus denying assertion that indictment was void).

[22] *Henderson*, 287 Ga. at 538 (3) (relying upon *Ward v. State*, 271 Ga. 648, 653 (7) (a) (520 SE2d 205) (1999), which explained that "specific intent was an essential element of the crime that must be proved beyond a reasonable doubt," and *Bacon v. State*, 209 Ga. 261, 263 (71 SE2d 615) (1952), which held that "intent to steal is an essential element of the crime of burglary"); *see Daddario v. State*, 307 Ga. 179, 184 (2) (a) (835 SE2d 181) (2019) ("[E]very crime has as elements an actus reus and a mens rea.").

13

elements of the crime or crimes charged, *including the required mens rea*, it violates

due process, is void, and cannot withstand a general demurrer]."[23]

Additionally, with regard to possession of controlled substances in violation

of OCGA § 16-13-30 (a), the Supreme Court of Georgia has held that it is *not* a strict

liability offense.[24] And while this statute does not *expressly* include *mens rea* like the

federal controlled substances statute does, "the state offense nevertheless includes the

---

[23] *State v. Mondor*, 306 Ga. 338, 341 (1) (830 SE2d 206) (2019) (punctuation omitted) (emphasis supplied). Although *Mondor* provides a "see also" citation to *Sevostiyanova v. State*, 313 Ga. App. 729 (722 SE2d 333) (2012), which relied upon *Tidwell*, which in turn relied upon *Dye* (*see supra* notes 12 to 14 & accompanying text), that portion of *Sevostiyanova* is not only dicta but is also factually distinguishable from the language used in the indictment in *Mondor*. *Compare Mondor*, 306 Ga. at 342-43 (1) (holding that indictment sufficiently alleged necessary *mens rea* when it asserted defendant "knowingly" committed the act, and providing a "see also" citation to *Sevostiyanova*), *with Sevostiyanova*, 313 Ga. App. at 741-42 (18) (holding that appellant waived challenge to indictment but, even if it had not been waived, the challenge would fail because indictment charged that defendant committed act "unlawfully," and relying upon *Tidwell*).

[24] *See Duvall v. State*, 289 Ga. 540, 542 (712 SE2d 850) (2011) ("Possession of a controlled substance is not a strict liability offense."); *Roundtree v. State*, 358 Ga. App. 140, 142 (1) (854 SE2d 340) (2021) (same); *Patterson v. State*, 328 Ga. App. 111, 117 (4) (761 SE2d 524) (2014) (same); *Cooper v. State*, 315 Ga. App. 773, 774 (1) (728 SE2d 289) (2012) (same); *see also Mohamed v. State*, 314 Ga. App. 181, 183 (1) (723 SE2d 694) (2012) ("[T]he [Supreme] Court explained that possession of a controlled substance would be a strict liability offense [without knowledge of the drug's chemical identity].").

same mens rea."[25] As a result, for violations of OCGA § 16-13-30 (a), the "actus reus in these statutes is possession of the drug, which one knows oneself to possess, when that drug is a controlled substance,"[26] whereas the *mens rea* is "intent to possess a drug with *knowledge* of the chemical identity of that drug."[27] Finally, our Supreme Court has also explained that the adjective "unlawful" means "not authorized by law; illegal."[28]

In light of the foregoing, I agree with Tate-Jesurum that *Dye* and its progeny have been *abrogated* by subsequent opinions of the Supreme Court of Georgia such that the use of "unlawfully" does *not* sufficiently act as a substitute for the essential

---

[25] *Calloway v. State*, 303 Ga. 48, 54 (2) (a) (i) n.6 (810 SE2d 105) (2018); *see Awtrey v. State*, 346 Ga. App. 892, 896-97 (1) (b) (815 SE2d 655) (2018) ("Although OCGA § 16-13-30 (b) does not include an express mens rea requirement, our Supreme Court has made clear that the crimes listed in OCGA § 16-13-30 are not strict liability crimes, and the criminal intent required by that section is the intent to possess, sell, or distribute a drug with knowledge of the chemical identity of that drug." (punctuation omitted)).

[26] *Duvall*, 289 Ga. at 542.

[27] *Id.* (emphasis supplied); *accord Harris v. State*, 358 Ga. App. 802, 810 (2) (a) n.8 (856 SE2d 378) (2021); *Patterson*, 328 Ga. App. at 117 (4).

[28] *Wetzel v. State*, 298 Ga. 20, 25 (2) (a) (779 SE2d 263) (2015); *see also* THE OXFORD ENGLISH DICTIONARY (3rd ed. 2010) (defining "unlawful" as "[c]ontrary to or prohibited by law; not conforming to, permitted by, or recognized by law; illegal; unjust, wrongful"), *available at* https://www.oed.com/view/Entry/215009.

element of "knowledge" or "knowingly"[29] in charging documents. As a result, Tate-Jesurum could admit to every allegation within the charging document—that he did "unlawfully possess Methamphetamine"—and he would not be guilty of a crime because the charging document does not include the necessary and required element of *mens rea*—that he possessed methamphetamine with the *knowledge* that the chemical he possessed was indeed methamphetamine.

Even so, the State suggests our Supreme Court's decision in *Budhani v. State*[30] forecloses my conclusion. But while *Budhani* dealt with a general demurrer directed at an indictment alleging violations of OCGA § 16-13-30 (b) for the sale of and possession with intent to distribute a controlled substance, the appellant in that case challenged the indictment as omitting what he deemed to be the essential elements of "the inapplicability of certain exemptions."[31] So, although the Supreme Court of Georgia concluded the indictment in *Budhani* was sufficient, and even though the

---

[29] *See* THE OXFORD ENGLISH DICTIONARY (3rd ed. 2010) (defining "knowingly" as "[w]ith knowledge or awareness (of what one is doing, of a fact, etc.); consciously, intentionally"), *available at* https://www.oed.com/view/Entry/104167.

[30] 306 Ga. 315 (830 SE2d 195) (2019).

[31] *Budhani v. State*, 345 Ga. App. 34, 37 (1) (812 SE2d 105) (2018), *affirmed but criticized*, 306 Ga. 315 (830 SE2d 195) (2019), *and overruled on other grounds by Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018).

16

indictment used "unlawfully," it was *not* asked whether the use of that word sufficiently alleged the necessary *mens rea*.[32] And because the specific question at issue here was not addressed in *Budhani* (which, again, dealt with a different offense in OCGA § 16-13-30 and does not cite to or discuss *Duvall*), that case cannot be fairly understood as foreclosing my conclusion in this case.[33]

The State also maintains that because the General Assembly removed "knowingly" from the trafficking statute (OCGA § 16-13-31) in 2013, "knowingly" need not be included in a charging document regarding an offense under OCGA § 16-13-30. Suffice it to say, the General Assembly's amendment of a different controlled substances statute does not alter our duty to follow and faithfully interpret precedents

---

[32] *See Budhani*, 306 Ga. at 320 (1) (b) ("The indictment withstands a general demurrer and satisfies due process here because it alleges the essential elements of the offenses—that [the defendant] sold, or possessed with intent to distribute, a specific Schedule I controlled substance—under OCGA § 16-13-30 (b), and put [the defendant] on notice of the crimes with which he is charged and against which he must defend." (punctuation omitted)).

[33] *See Seals v. State*, 311 Ga. 739, 745 (2) (b) (860 SE2d 419) (2021) ("Decisions of this Court and of the Court of Appeals do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (punctuation omitted)), *disapproved of on other grounds by Gonzales v. State*, 315 Ga. 661 (884 SE2d 339) (2023).

17

of the Supreme Court of Georgia.[34] And importantly, since our Supreme Court's 2011 decision in *Duvall*, the General Assembly has not amended OCGA § 16-13-30 in a manner suggesting that it disagrees with the *Duvall* Court's conclusion regarding the required *mens rea* for violations of that statute.[35] Needless to say, once the Supreme Court of Georgia interprets a statute, its interpretation becomes "an integral part of the statute."[36]

---

[34] *See* GA. CONST., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) ("[V]ertical stare decisis dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia[.]"); *State v. Smith*, 308 Ga. App. 345, 352 (1) (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court.").

[35] *See Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (1) (637 SE2d 14) (2006) (concluding that because General Assembly amended statute a number of times since the relevant decision, but "never so as to alter the interpretation given the statute in that decision," our Supreme Court's decision remained viable authority on construction of the statute); *see also Fair v. State*, 288 Ga. 244, 252 (2) (702 SE2d 420) (2010) ("[I]n interpreting a statute, we must presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it. We construe statutes in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and decisions of the courts." (punctuation omitted)).

[36] *Ward v. Marriott Int'l, Inc.*, 352 Ga. App. 488, 493 (2) (a) (835 SE2d 322) (2019) (punctuation omitted); *see Gulf, C. & S.F. Ry. Co. v. Moser*, 275 U.S. 133, 136 (2) (48 SCt 49, 72 LE 200) (1927) (explaining that "[t]he interpretation approved by

18

The majority suggests my analysis hinges on *Duvall* and its progeny, but this conclusion is reached by construing the *Duvall* line of jurisprudence along with the Supreme Court of Georgia's binding opinions in *Henderson*, *Mondor*, *Calloway*, and *Wetzel*, as detailed *supra*. And while it is certainly true that none of these cited authorities *explicitly* stand for this conclusion, I believe it is the only logical way to reconcile the holdings in those decisions. Independently, those authorities hold that (1) possession of a controlled substance is not a strict liability offense;[37] (2) our state offense has the same required element of *mens rea* as the federal offense despite that element's absence from the text of the state statute;[38] (3) the omission of a required

---

[the Supreme Court of the United States] has become an integral part of the statute" that "should be accepted and followed").

[37] *Duvall*, 289 Ga. at 542 ("Possession of a controlled substance is not a strict liability offense."); *Roundtree*, 358 Ga. App. at 142 (1) (same); *Patterson*, 328 Ga. App. at 117 (4) (same); *Cooper*, 315 Ga. App. at 774 (1) (same); *see also Mohamed*, 314 Ga. App. at 183 (1) ("[T]he [Supreme] Court explained that possession of a controlled substance would be a strict liability offense [without knowledge of the drug's chemical identity].").

[38] *Calloway*, 303 Ga. at 54 (2) (a) (i) n.6 (holding that while OCGA § 16-13-30 (a) does not *expressly* include *mens rea* like the federal controlled substances statute does, "the state offense nevertheless includes the same mens rea").

19

element—including *mens rea*—renders an indictment void;[39] and (4) "unlawful" means "not authorized by law; illegal."[40] Taking these authorities together, as we are required to do, I conclude "unlawfully" cannot act as a substitute for "knowingly" in the accusation before us.

Accordingly, I agree with Tate-Jesurum that the charging document against him is void because it omitted the necessary element of *mens rea*, and the trial court erred in denying his general demurrer on this ground.

I likewise agree the trial court erred in denying his plea in bar on the ground that the four-year statute of limitations barred further prosecution.[41] Needless to say,

---

[39] *Mondor*, 306 Ga. at 341 (1) (noting that if an indictment "fails to allege all the essential elements of the crime or crimes charged, *including the required mens rea*, it violates due process, is void, and cannot withstand a general demurrer" (emphasis supplied)).

[40] *Wetzel*, 298 Ga. at 25 (2) (a).

[41] *See* OCGA § 17-3-1 (c) ("Except as otherwise provided in Code Section 17-3-2.1, prosecution for felonies other than those specified in subsections (a), (b), and (d) of this Code section shall be commenced within four years after the commission of the crime . . . ."); *cf. Towns v. State*, 357 Ga. App. 701, 703 (849 SE2d 249) (2020) (reversing denial of general demurrer and plea in bar when State reindicted defendant outside of the statute-of-limitations).

a void charging document does not toll the statute of limitations.[42] And as explained

*supra*, I believe the accusation against Tate-Jesurum in this case is void.[43] As a result,

because the incident was allegedly committed on February 27, 2018, in the face of a

void accusation that did not toll the statute of limitations, it expired on February 27,

2022. The trial court, then, should have granted Tate-Jesurum's plea in bar in addition

to the general demurrer.

    For all these reasons, I respectfully dissent from the majority's opinion.

---

    [42] *Taylor v. State*, 160 Ga. 331, 336 (3) (127 SE 652) (1925); *see State v. Outen*, 296 Ga. 40, 46 (3) n.3 (764 SE2d 848) (2014) ("Thus, the return of a defective (voidable), *as opposed to a void*, indictment tolls the statute of limitations for the charges contained in it, and even after the limitations period has expired the defect may be corrected by a superseding indictment that meets the relation-back test—but only if the corrective indictment is filed before the original indictment is dismissed." (emphasis supplied)).

    [43] *See Mondor*, 306 Ga. at 341 (1) ("To the extent that an indictment fails to allege all the essential elements of the crime or crimes charged, including the required mens rea, it violates due process, is *void*, and cannot withstand a general demurrer." (punctuation omitted) (emphasis supplied)).

21